D.N. Brady, ESQ. Bar No. 118461
Douglas M. Weisband, ESQ. Bar No. 332262
San Diego Employment Law Group
2878 Camino Del Rio South, Suite 160
San Diego, CA 92108
Telephone: (619) 626-2084
Email: gradyfedonly@msn.com, sdlawgroups@outlook.com

Attorneys for Plaintiff,
CLARENCE E. BOYCE

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CLARENCE ETHAN BOYCE,<br><br>Plaintiff,<br><br>v.<br><br>ALEJANDRO MAYORKAS[1], SECRETARY, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, CUSTOMS AND BORDER PROTECTION,<br><br>Defendant. | No. ED CV 18-01576 CBM (SHKx)<br><br>PLAINTIFF'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW<br><br>[LOCAL RULE 52-1]<br><br>Pretrial Conference: February 8, 2022<br>Time: 11:00 a.m.<br>Courtroom: 8B<br><br>Trial Date: February 9, 2022<br><br>Hon. Consuelo B. Marshall<br>United States District Judge |

Pursuant to Local Rule 52-1, Plaintiff, Clarence Boyce ("Plaintiff"), hereby submits his Findings of Fact and Conclusions of Law.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Alejandro Mayorkas, who was sworn in Secretary for Homeland Security on February 2, 2021, is automatically substituted as defendant in this matter.

1

## FINDINGS OF FACT & CONCLUSIONS OF LAW

This matter came before the Court for a bench trial, which was held on February 9, 2022. Plaintiff Clarence Boyce asserted a single claim for retaliation. At the close of the trial, the Court ordered the parties to submit proposed findings of fact and conclusions of law. The parties filed their proposals February 25, 2022 (Docket #s 119 & 120).

In accordance with Federal Rules of Civil Procedure 52(a) and Local Rule 52-1 and having reviewed the parties' post-trial submissions as well as the entire record, the Court now makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT:

1. On April 2, 2009, Mr. Clarence Boyce ("Plaintiff") began employment as a Border Patrol Agent ("BPA") with the Department of Homeland Security, Customs and Border Protection ("Defendant").

2. In 2010, Plaintiff engaged in protected activity by writing an EEO complaint against Defendant for discrimination against him based on race and sexual orientation. In 2014, Plaintiff engaged in protected activity and filed a subsequent EEO complaint against Defendant, which alleged discrimination against him based on race, reprisal activity, and sexual orientation. Plaintiff also filed a complaint with the Office of Special Counsel alleging whistleblower retaliation, based on a protected disclosure he made on December 29, 2014, and because he participated as a witness against the Defendant in an Merit System Protection Board ("MSPB") case, filed by a fellow co-worker.

3. On May 10, 2016, Plaintiff signed a Last Chance Agreement ("LCA") with CBP in which he agreed not to engage in any "conduct unbecoming" a BPA for two years from the effective date of the agreement. In exchange, Defendant agreed not to immediately remove Plaintiff from his position as a Border Patrol Agent,

2

GS-1896-12 and to hold the removal action in abeyance pending Plaintiff's compliance with the agreement for the two-year period.

4. On November 2, 2017, Plaintiff met with Supervisory Border Patrol Agent ("SBPA") Scott Pinckney ("Pinckney") and Watch Commander ("WC") Arturo Velez ("Valez"). Plaintiff informed SBPA Pinckney and WC Velez that another BPA, Froylan Mendiola ("Mendiola"), reported an allegation that Mr. Mendiola had been subjected to unlawful racial profiling by Border Patrol. During the same meeting on November 2, 2017, Plaintiff also reported that BPA Ruth Chavez ("Chavez") had complained of harassment by SBPA Pinckney. During the meeting, Plaintiff informed WC Valez that he would be writing an EEO complaint regarding the two instances, thus assisting BPA Mendiola and BPA Chavez with their EEO complaints, -- a protected activity, under Title VII.

5. Plaintiff arrived at the Murrieta Station on November 3, 2017, at approximately 6:11 a.m. Plaintiff's scheduled shift on November 3, 2017, was from 6:00 a.m. through 2:00 p.m. and he was assigned the Northbound License Plate Reader non-fixed roving patrol duties in Zone 67. Zone 67 encompasses the I-15 corridor from the city of Murrieta to the city of Corona.

6. At approximately 6:15 a.m. on November 3, 2017, Plaintiff met with SBPA Stanley McClung ("McClung") in his office to discuss his shift assignment. Plaintiff also stated that he intended to write an EEO complaint that day regarding the two individual cases of harassment and discrimination, which were discussed on November 2, 2017.

7. At approximately 6:17 a.m. on November 3, 2017, Plaintiff and SBPA McClung approached WC Velez to discuss the shift assignment and whether Plaintiff could work on the EEO complaints that day. WC Valez told Plaintiff that he could draft his EEO complaints during Border Patrol Agent Pay Reform Act of 2014 ("BPAPRA") overtime hours from 2:00 p.m. to 4:00 p.m. However, BPAPRA does not allow for this type of administrative work during these

3

overtime hours, and Plaintiff informed SBPA McClung and WC Valez of this. In response, Plaintiff's supervisors, SBPA McClung and WC Valez, instructed him to draft his EEO Complaint in the same or similar words "at the end of shift" or "end of the day."

8.  Subsequently on November 3, 2017, SBPA McClung gave Plaintiff keys for his assigned vehicle and Plaintiff left the station to go out into the field. Plaintiff proceeded to his assignment, roving patrol on the I-15 Corridor from Murrieta to Corona, along with two (2) other BPAs, BPA Brandon Buke ("Burke") and BPA Christopher Raymond ("Raymond"). While on roving patrol, agents are permitted to return to the station to take breaks, obtain supplies, and perform administrative work, such as checking e-mails or drafting an EEO complaint without supervisory authorization. Plaintiff's job description states that a BPA, "carries out the assignments independently," "exercises considerable ingenuity in making judgments…and using discretion in the application of these general guidelines…"

9.  On November 3, 2017, Plaintiff returned from the field and entered the Murrieta Station at approximately 10:40 a.m. Plaintiff returned to the station for his meal break, and to attend several administrative matters, such as checking his email. Plaintiff never received instructions from any members of management or employees stating that he was required to "stay out in the field," or that he was prohibited from returning to the Murrieta Station without supervisory authorization on November 3, 2017.

10. Around 12:00 p.m. on November 3, 2017, Plaintiff moved to another location within the station and began to draft the EEO complaints on behalf of BPA Mendiola and BPA Chavez -- complaints which his supervisors have acknowledged they knew he was planning to draft that day. Plaintiff had followed his supervisor's instruction and did not begin working on the EEO complaints till his instructed time, (i.e., "end of the day" "end of shift") as his regular shift was scheduled to end at 2:00 p.m.

4

11. At approximately 12:50 p.m. on November 3, 2017, SBPA Pinckney and SBPA McClung approached Plaintiff in the quiet room of the Murrieta Station. SBPA Pinckney asked Plaintiff why he was back at the station and not out in the field. Plaintiff informed SBPA that he was working on the EEO related matter at the end of his shift, as he opted out of BPAPRA that day. SBPA Pinckney informed Plaintiff that BPA Chavez was left out in the field alone without backup as a result of Plaintiff returning to the Murrieta Station. Plaintiff informed SBPA Pinckney that Chavez did have back up and was not in the field alone. In addition, Plaintiff and BPA Chavez were not assigned to the same corridor on November 3, 2017. Being stressed out because SBPA Pinckney was harassing him for working on an EEO related matter in which he was accusing SBPA Pinckney of EEO violations, Plaintiff asked SPBA McClung for leave. SBPA McClung granted Plaintiff leave and Plaintiff departed the Murrieta Station.

12. On November 4, 2017, Plaintiff requested and was granted leave. On November 4, 2017, Plaintiff arrived at the Murrieta station at 9:16 a.m. and worked on his EEO complaints on his own time for approximately thirteen (13) hours.

13. Back at work on November 5, 2017, Plaintiff was called into SBPA Pinckney's office. In this meeting, Plaintiff voiced his concern that he was being subjected to harassment for reporting EEO violations. SBPA Pinckney gave Plaintiff a Weingarten notice and instructed him to prepare a memorandum regarding the November 3, 2017 events. Pinckney instructed Plaintiff to address why he was in the Murrieta Station working on his EEO related matter outside of BPAPRA. At no point in time did Pinckney inform Plaintiff that WC Valez instructed him to remain out in the field on November 3, 2017.

14. On November 5, 2017, Plaintiff prepared the memorandum. In the memorandum, Plaintiff addressed the November 3, 2017 events and accused SBPA Pinckney of harassment and retaliation. He also explained to Pinckney in

his memo, that the inquiry seemed to be an attempt to dissuade him from supporting BPA Chavez's EEO complaints naming SPBA Pinckney as a responsible management official. Plaintiff sent this memorandum to SBPA Pinckney on November 5, 2017.

15. On November 7, 2017, at approximately 1:10 a.m., Plaintiff sent his report, an eleven (11) page e-mail, to Chief Rodney Scott accusing Murrieta Station management officials of misconduct including EEO violations. In the e-mail, Mr. Boyce reported being subjected to unlawful workplace harassment, discrimination, and retaliation both for himself and his co-workers. Plaintiff also addressed his protected activity on November 2, 2017, when he reported to WC Valez and SBPA Pinckney the unlawful management discrimination and harassment levied against BPA Chavez and BPA Mendiola.

16. The management officials who were sent the November 7, 2017 email, were Chief Rodney Scott, Walter Davenport, Marc Gonzalez, Stanley McClung, Scott Gandre, Scott Pinckney. Fredrick Kochmanksi and Arturo Velez were also sent the email.

17. On November 14, 2017, Plaintiff and BPA Chavez met with Deputy Agent in Charge, Marc Gonzalez ("Gonzalez"), in his office. Plaintiff and BPA Chavez reported to Deputy Patrol Agent in Charge Gonzalez that Chavez was subjected to gender discrimination by SBPA Pinckney, and asked him to look into the matter.

18. On November 16, 2017, Chief Patrol Agent, Rodney Scott issued a notice of removal to Plaintiff. It was not a notice of proposed removal, thus allowing him an opportunity to defend himself before a final removal decision was made. Normally, agency permanent employees facing removal are given a notice of proposed removal first. Patrol Agent in Charge Walter Davenport physically handed Plaintiff the notice of removal. The notice of removal states that Plaintiff breached the LCA by engaging in "conduct unbecoming" a BPA on November 3, 2017.

6

19. The Notice of removal stated that on November 3, 2017, SBPA McClung and WC Valez had informed Plaintiff that he was needed in the field and could write his EEO letter at the end of his shift. It was also stated that WC Valez had told Plaintiff that he could work on his EEO complaint during his BPAPRA, between 2:00 p.m. and 4:00 p.m. It was also claimed that Plaintiff was outside of his assigned work area at 12:45 p.m. when he was seen in the Murrieta Station quiet room without supervisory authorization, claiming that he "caused a serious officer safety concern when [he] left [his] fellow agent assigned to Northbound License Plate Reader Response (NB LPR) out in the field alone."

## II. CONCLUSIONS OF LAW

The Court must now determine whether Plaintiff has proven his case for retaliation.

### 1. Retaliation

1. To establish a *prima facie* case for retaliation under Title VII, Plaintiff must demonstrate: (1) he engaged or was engaging in activity protected under Title VII[2], (2) the employer subjected him to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action." (*Yartzoff v. Thomas*, (9th Cir. 1987) 809 F.2d 1372, 1375). To establish a causal connection, Plaintiff bears the burden of presenting "evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." (*Cohen v. Fred Meyer, Inc.* (9th Cir. 1982) 686 F.2d 793, 796).

---

[2] Protected activity under Title VII includes informal complaints to supervisors regarding conduct prohibited by Title VII, and filing a complaint, testifying, assisting or participating "in the machinery set up" to enforce the provisions of Title VII. *See Passantino v. Johnson & Johnson Consumer Prod., Inc.,* 212 F.3d 493, 506 (9th Cir. 2000); *Villiarimo,* 281 F.3d at 1064; *Hashimoto v. Dalton,* 118 F.3d 671, 680 (9th Cir. 1997); *E.E.O.C. v. Cal. Psychiatric Transitions, Inc.,* 725 F. Supp. 2d 1100, 1108 (E.D. Cal. 2010).

2.    After hearing the witnesses' testimony, and after due consideration of the evidence in the record, the Court finds that Plaintiff has met his burden in proving his claim for retaliation. The gist of Plaintiff's claim is that Defendant retaliated against him for his long history of EEO activity, to include; his November 2, 3, 5, 7, and 14, 2017, EEO activity when they terminated him just nine (9) days later on November 16, 2017.

3.    The first two elements of Plaintiff's Title VII retaliation claim are clearly met and are based on his complaints to supervisors regarding discriminatory conduct including a November 7, 2017 letter to acting Chief Patrol Agent Rodney Scott regarding several incidents of managerial misconduct, unlawful discrimination, unlawful harassment, and unlawful retaliation, and Plaintiff's work on an EEO complaints for two other employees on November 3, 2017. Plaintiff was subsequently terminated, which is an adverse employment action.

4.    Further, Plaintiff is able to establish the third element. One way to establish a causal link is through temporal proximity. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close…" (*Clark County School District v. Breeden,* (2001) 532 U.S. 268, 273). Plaintiff's temporal proximity between the protected activity and the adverse employment action, his termination, was nine (9) days. I find this sufficient proximity and therefore, Plaintiff has stated a *Prima Facie Case* for retaliation under Title VII.

5.    Once Plaintiff establishes a *prima facie* case for retaliation, the *McDonnell Douglas* burden-shifting framework applies and "the burden of production—but not persuasion—then shifts to the employer to articulate some legitimate nondiscriminatory reason for the challenged action." (*Villiarimo v. Aloha Island Air, Inc.*, (9th Cir. 2002) 281 F.3d 1054, 1062). "If the employer does so, the plaintiff must show that the articulated reason is pretextual either directly by

8

persuading the court that a discriminatory reason more than likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id*. "[I]f the plaintiff can show pretext, then the *McDonnell Douglas* framework disappear[s]." *Id*. "The ultimate burden of persuading the trier of fact that the defendant intentionally [retaliated] against the plaintiff remains at all times with the plaintiff." *Id*.

6. The evidence at trial demonstrates that Defendant's proffered reasons for Plaintiff's termination set as forth in the Notice of Removal allegedly based on Plaintiff's returning to the station during his shift on November 3, 2017 without authorization, Plaintiff leaving a fellow agent alone in the field, and Plaintiff causing a serious officer safety concern, are pretextual.

7. The evidence establishes that Plaintiff's supervisors authorized Plaintiff to return to the Murrieta station on November 3, 2017 to work on his EEO complaint at the end of his shift or at the end of the day. Thus, Plaintiff's 10:50 a.m. return to the office was authorized. Second, the evidence is clear that Plaintiff did not leave a fellow agent alone in the field. BPA Raymond and BPA Burke, who had the same corridor as Plaintiff, I-15 corridor from Murrieta to Corona, drove in one vehicle together and thus, were not left alone in the field. BPA Chavez was assigned a different area on November 3, 2017, I-15 Corridor between Highway 76 and Highway 78, and testified that she was not left alone in the field, had backup, and was not involved in a serious officer safety concern on November 3, 2017. Thus, Plaintiff did not leave a fellow agent alone in the field on November 3, 2017.

8. The evidence establishes that Defendants informed Plaintiff on November 2, 2017 and November 3, 2017, that Plaintiff could work on protected activity on November 3, 2017. It is clear that Plaintiff engaged in protected activity on November 3, 2017. Moreover, Plaintiff engaged in protected activity through his November 7, 2017, email. Thus, Defendant knew Plaintiff engaged in protected

9

activity and terminated him just nine (9) short days later. Defendant's proffered "legitimate non-discriminatory" reasons are pretextual. All that Defendant proved at trial was that a discrepancy existed as to the time Plaintiff was authorized to work on his protected activity, not that he lacked authorization.

9. In short, the Court finds that Plaintiff has met his burden to prove that Defendant retaliated against him for his protected activity by a preponderance of the evidence and more. As a result, Plaintiff is entitled to compensatory and emotional distress damages related to his claim for retaliation.

III. **CONCLUSIONS**

In light of the findings of fact and conclusions of law, the Court ORDERS that Judgment on behalf of Plaintiff be entered.

**SO ORDERED.**

Dated:                                   By:_____
                                         Honorable Consuelo B. Marshall
                                         United States District Judge