UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CLARENCE ETHAN BOYCE,<br><br>Plaintiff,<br><br>v.<br><br>ALEJANDRO MAYORKAS, SECRETARY, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, CUSTOMS AND BORDER PROTECTION,<br><br>Defendant. | No. CV 18-01576 CBM (SHKx)<br><br>SECOND AMENDED FINAL PRETRIAL CONFERENCE ORDER<br><br>Hon. Consuelo B. Marshall<br>United States District Judge |

Following pretrial proceedings, pursuant to F.R.Civ.P. 16 and L.R. 16, an initial Pretrial Conference on October 12, 2021, and a second Pretrial Conference on January 11, 2022, IT IS ORDERED:

## I. PARTIES AND PLEADINGS

The parties are: Plaintiff, Clarence Boyce; and Defendant Alejandro Mayorkas, Secretary, United States Department of Homeland Security.

Defendant has been served and has appeared. All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

The pleadings which raise the issue are:

1) Plaintiff's First Amended Complaint (Dkt. 22) filed March 4, 2019;
2) Defendant's Answer to the First Amended Complaint (Dkt. 25) filed March 26, 2019;
3) Order (Dkt. 68), filed January 20, 2021: denying Defendants Motion for Summary Judgment (Dkt. 45) as to Plaintiff's Title VII retaliation claim (First Cause of Action); dismissing Plaintiff's Whistleblower Protection Act claim (Second Cause of Action); and dismissing Plaintiff's appeal of the Merit System Protection Board ("MSPB") Decision (Third Cause of Action).
4) Notice of Plaintiff's Waiver of Jury Demand; Joint Stipulation to Continue Pretrial and Trial Dates (Dkt. 91), filed October 20, 2021.
5) Order Re: 2016 Last Chance Agreement (Dkt. 103).

## II. JURISDICTION

It is stipulated that subject jurisdiction over this action exists under 42 U.S.C. § 2000e, *et seq.*, and venue is proper in this District and Division pursuant to 28 U.S.C. § 1391.

## III. TRIAL DURATION

The trial is estimated to take 3-5 trial days.

## IV. JURY TRIAL

The trial is to be a court trial.

V. **ADMITTED FACTS**

The following facts are admitted and require no proof: None.

VI. **STIPULATED FACTS**

The following facts, though stipulated, shall be without prejudice to any evidentiary objection:

a. On April 2, 2009, Mr. Clarence Boyce ("Plaintiff") entered on duty as a Border Patrol Agent ("BPA") with the U.S. Customs and Border Protection ("CBP"). Plaintiff held the position of Border Patrol Agent at all times relevant to this appeal until the effective date of his removal on November 16, 2017.

b. On May 10, 2016, Plaintiff signed a Last Chance Agreement ("LCA") with CBP in which he agreed not to engage in any conduct unbecoming a BPA for two years from the effective date of the agreement. In exchange, CBP agreed not to immediately remove Plaintiff from his position as a Border Patrol Agent, GS-1896-12 and to hold the removal action in abeyance pending Plaintiff's compliance with the agreement for the two-year period.

c. On November 2, 2017, Plaintiff met with Supervisory Border Patrol Agent ("SBPA") Scott Pinckney and Watch Commander ("WC") Arturo Velez. Plaintiff informed SBPA Pinckney and WC Velez that another BPA, Froylan Mendiola ("Mr. Mendiola"), reported an allegation that Mr. Mendiola had been subjected to unlawful racial profiling.

d. During the same meeting on November 2, 2017, Plaintiff also reported that BPA Ruth Chavez complained about SBPA Pinckney.

e. On November 3, 2017, Plaintiff was assigned the Northbound License Plate Reader nonfixed roving patrol duties in Zone 67. Zone 67 encompasses the 1-15 corridor from the city of Murrieta to the city of Corona.

f. Prior to arriving at the Murrieta Station on November 3, 2017, Plaintiff contacted SBPA Pinckney to report that he would arrive at the Murrieta Station

3

approximately ten minutes late. SBPA Pinckney thanked Plaintiff for the notification.

g. Plaintiff arrived at the Murrieta Station on November 3, 2017, at approximately 6:11 a.m. Shortly after arriving at the station, Plaintiff was informed about his work assignment in Zone 67.

h. At approximately 6:15 a.m. on November 3, 2017, Plaintiff met with SBPA McClung in his office to discuss his shift assignment. Plaintiff also stated that he wanted to work on an EEO related matter.

i. At approximately 6:17 a.m. on November 3, 2017, Plaintiff and SBPA McClung approached WC Velez to discuss the shift assignment and whether Plaintiff could work on an EEO related matter that day.

j. Subsequently on November 3, 2017, SBPA McClung gave Plaintiff keys for his assigned vehicle and Plaintiff left the station to go out into the field.

k. On November 3, 2017, Plaintiff returned from the field and entered the Murrieta Station at approximately 10:40 a.m.

l. At approximately 12:50 p.m. on November 3, 2017, SBPA Pinckney and SBPA McClung approached Plaintiff in the quiet room of the Murrieta Station. SBPA Pinckney asked Plaintiff why he was back at the station and not out in the field.

m. Plaintiff asked SBPA McClung for leave. SBPA McClung granted Plaintiff leave and Plaintiff departed the Murrieta Station.

n. On November 4, 2017, Plaintiff requested and was granted emergency annual leave.

o. On November 5, 2017, Plaintiff was called into SBPA Pinckney's office. SBPA Pinckney gave Plaintiff a Weingarten notice and instructed him to prepare a memorandum regarding the November 3, 2017 events.

p. Plaintiff prepared a memorandum. In the memorandum, Plaintiff accused SBPA Pinckney of harassment and retaliation.

    q. On November 7, 2017, at approximately 1:10 a.m., Plaintiff sent an email to Chief Rodney Scott accusing Murrieta Station management officials of misconduct.

    r. The management officials included on the November 7, 2017 email, were Chief Rodney Scott, Walter Davenport, Marc Gonzalez, Stanley McClung, Scott Gandre, Scott Pinckney. Fredrick Kochmanksi and Arturo Velez were also included in the email.

    s. On November 14, 2017, Plaintiff and BPA Chavez met with Deputy Agent in Charge, Marc Gonzalez, in his office.

    t. On November 16, 2017, Chief Patrol Agent, Rodney Scott issued a notice of removal action to Plaintiff. Patrol Agent in Charge Walter Davenport, physically handed Plaintiff the notice of removal. The notice of removal states that Plaintiff breached the LCA by engaging in conduct unbecoming a BPA.

    u. On December 13, 2017, Plaintiff, through his attorneys, filed an action before the Merit System Protection Board, appealing his removal.

## VII. PARTIES' CLAIMS AND DEFENSES

**Plaintiff's Claims:**

    (a) <u>Plaintiff plans to pursue the following claims against Defendant:</u>

        Claim 1: Retaliation

    (b) <u>The elements required to establish Plaintiff's claim are:</u>

    To establish a *prima facie* case for retaliation under Title VII, Plaintiff must demonstrate: (1) he engaged or was engaging in activity protected under Title VII, (2) the employer subjected him to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action." (*Yartzoff v. Thomas*, (9th Cir. 1987) 809 F.2d 1372, 1375). To establish a causal connection, Plaintiff bears the burden of presenting "evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." (*Cohen v. Fred Meyer, Inc.* (9th Cir. 1982) 686 F.2d 793, 796).

    Once Plaintiff establishes a *prima facie* case for retaliation, the *McDonnell*

5

*Douglas* burden-shifting framework applies and "the burden of production—but not persuasion—then shifts to the employer to articulate some legitimate nondiscriminatory reason for the challenged action." (*Villiarimo v. Aloha Island Air, Inc.*, (9th Cir. 2002) 281 F.3d 1054, 1062). "If the employer does so, the plaintiff must show that the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more than likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* "[I]f the plaintiff can show pretext, then the *McDonnell Douglas* framework disappear[s]." *Id.* "The ultimate burden of persuading the trier of fact that the defendant intentionally [retaliated] against the plaintiff remains at all times with the plaintiff." *Id.*

  (a) <u>In brief, the key evidence Plaintiff relies on for each of the claims is:</u>

    (i) First element, Plaintiff's Title VII retaliation claim is based on (1) Plaintiff's own multiple EEO complaints which predated the events in question; (2) Plaintiff's long standing pattern of assisting co-workers with their EEO complaints; (3) Plaintiff's participation as a witness in an EEO case for a co-worker; (4) on November 3, 2017, assisting co-workers with their EEO complaints; and (5) his complaints to supervisors regarding discriminatory conduct including a November 7, 2017 letter to acting Chief Patrol Agent Rodney Scott regarding several incidents of managerial misconduct, unlawful discrimination, unlawful harassment, and unlawful retaliation.

    Second element, Plaintiff was subsequently terminated for such activity, which is an adverse employment action.

    Third element, causal link between the protected activity and the employer's action. One way to establish a causal link is through temporal proximity. The cases that accept temporal proximity between an employer's knowledge of protected activity and an adverse employment action is sufficient evidence of causality to establish a prima facie case uniformly

hold that the temporal proximity must be 'very close.' (*Clark County School District v. Breeden*, (2001) 532 U.S. 268, 273). Thus, this shifts the burden of proof to Defendant. Plaintiff's temporal proximity between the protected EEO activity and the adverse employment action was *four days*. This is sufficient proximity and therefore, Plaintiff has stated a Case for retaliation under Title VII.

(b) Pretext

The Agency's articulated reasons for Plaintiff's termination are pretextual. In her summary judgment ruling finding in favor of Plaintiff, Judge Marshall stated,

> "Therefore, Plaintiff's evidence demonstrates a reasonable trier of fact could find Defendant's proffered reasons for Plaintiff's termination set forth in the Notice of Removal based on Plaintiff returning to the station during his shift on November 3, 2017 without authorization, Plaintiff leaving a fellow agent alone in the field, and Plaintiff causing a serious officer safety concern, are pretextual. Accordingly, the Court denies the Defendant's Motion for Summary Judgment on Plaintiff's Title VII retaliation claim (first cause of action)."

Damages

Plaintiff is entitled to compensatory damages to the maximum extent allowed by law. He has taken all appropriate steps to mitigate his damages.

**Defendant's Affirmative Defenses:**

The Retaliation Claim

There is insufficient evidence for Plaintiff to prevail on his sole remaining retaliation claim. In order to state a *prima facie* case of retaliation, Plaintiff must establish: (1) he engaged in prior protected activity; (2) Defendant subjected him to an adverse employment action; and (3) a causal link between the protected activity and the adverse action. *See Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1064 (9th Cir. 2002); *Emeldi v. Univ. of Oregon*, 673 F.3d 1218, 1223 (9th Cir. 2012), republished as amended, 698 F.3d 715 (2012). Thus, Plaintiff has the burden of establishing that

retaliation was the but-for cause of differential treatment, *i.e.*, his removal. *See Babb v. Wilkie*, 140 S. Ct. 1168, 1174 (2020) (applying but-for causation to the materially identical language of the Age Discrimination in Employment Act).[1] *See also* Ninth Circuit Model Civil Jury Instructions §10.8.

Here, Plaintiff does not clearly identify a protected activity, and therefore cannot establish a *prima facie* case for retaliation. Plaintiff has alleged that he informed SBPA Scott Pinckney and WC Arturo Velez about complaints by other Border Patrol Agents and requested time to work on an EEO matter on November 3, 2017. However, far from discouraging Plaintiff from engaging in EEO activity, the supervisors' actions instead demonstrate their willingness to work with him in that they authorized him to work on such matters at the end of his shift. Plaintiff's November 7, 2017 email to Chief Rodney Scott, accusing the supervisors of "misconduct" was sent only *after* SBPA Pinckney met with Plaintiff on November 5, 2017, gave Plaintiff a *Weingarten* notice[2], and instructed him to prepare a memo regarding the events that occurred on November 3, 2017.

Plaintiff's actions on November 3, 2017 demonstrated a complete disregard of his supervisors' authority. It is uncontroverted that Plaintiff's supervisor instructed him to work his assigned duties on November 3, 2017, and approved time for him to work on administrative matters later in the day. The testimony of the supervisors will demonstrate that Plaintiff did not comply with the instructions of his supervisors, which resulted in the reporting of his behavior up the chain of command and an investigation, and

---

[1] Although *Babb* addressed the causation standard applicable to federal sector Age Discrimination in Employment cases, the ADEA's anti-discrimination provision is materially identical to Title VII's anti-discrimination provision. *See* 29 U.S.C. 633a(a) ("All personnel actions … shall be made free from any discrimination based on age."); 42 U.S.C. § 2000e-16(a) ("All personnel actions … shall be made free from any discrimination based on race, color, religion, sex, or national origin.").

[2] The *Weingarten* notice provides notice to an employee, pursuant to 5 USC § 7114(a)(2)(B), of their right to union representation during an interview if they reasonably believe that the results of the interview may result in disciplinary action against them.

ultimately a finding that he failed to abide by the terms of his Last Chance Agreement. The *Breeden* Court held that an employer's proceeding along lines previously contemplated, even if not definitively determined, is no evidence whatever of causality. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272, 121 S.Ct. 1508, 1511 (2001); *see also Cohen*, 686 F.2d at 797 (same). These actions were set in place *before* Plaintiff's email regarding "management misconduct." Accordingly, Plaintiff will be unable to show that retaliation was the but-for cause of his removal. *Babb*, 140 S. Ct. at 1174.

To the extent Plaintiff now attempts to rely on protected activities that pre-date the Last Chance Agreement, those allegations are unexhausted as to this case, fail to demonstrate retaliation since Plaintiff was not removed at that time, and clearly do not meet the temporal proximity requirement to demonstrate causation as to the 2017 removal. *Breeden*, 532 U.S. at 273 ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"). The 2015 Notice of Removal sets forth numerous instances of Plaintiff's integrity problems, disruptive behavior, and failure to cooperate or follow CBP rules. However, rather than remove Plaintiff at that time, he was offered a second chance. On May 10, 2016, Plaintiff signed a Last Chance Agreement in which he agreed not to engage in any conduct unbecoming a BPA for two years from the effective date of the agreement. In exchange, Defendant agreed not to immediately remove Plaintiff from his position as a BPA and to hold the removal action in abeyance pending Plaintiff's compliance with the agreement for the two-year period.

Finally, the mere knowledge of prior protected activity, without more, is not sufficient to infer causation. *Breeden*, 532 U.S. at 273-74; *Manatt v. Bank of Am.*, NA, 339 F.3d 792, 802 (9th Cir. 2003). Here, there is no basis to conclude that Plaintiff's supervisors had any retaliatory intent toward Plaintiff when they forwarded their memos regarding his behavior on November 3, 2017. *See Mitchell v. Superior Court of Cal. County of San Mateo*, 312 Fed. Appx. 893, 895 (9th Cir. 2009) (declining to make a

prior FEHA complaint tantamount to a "get out of jail free card"); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 357 (2013) (the "but-for causation" standard serves to close the door on employees seeking to file retaliation claims by disallowing an employee, who perceives his or her own impending termination, to "shield against [those] imminent consequences" by pursuing some form of protected activity). In addition, Plaintiff fails to demonstrate that WC Velez or SBPA Pinckney had any knowledge or involvement with any earlier protected activity by the Plaintiff.

Damages

Plaintiff's claimed damages are limited as provided for under 42 U.S.C. §1981a, 1981a(b)(3)(D), including but not limited to, a cap on non-pecuniary losses. The statutory cap on non-pecuniary damages is set by statute. 42 U.S.C. § 1981a. Defendant further disputes that Plaintiff is entitled to the full damages cap based on the evidence discussed above. In addition, Plaintiff has failed to mitigate any damages.

## VIII. REMAINING TRIABLE ISSUES

Plaintiff's View of Remaining Triable Issues:

To be tried are Plaintiff's retaliation claim, his reinstatement to his previous position with the Defendant and the amount of damages to be awarded.

Defendant's View of Remaining Triable Issues:

In view of the stipulated facts and the elements required to establish the claim and affirmative defenses, the following issues remain to be tried: Plaintiff's retaliation claim and the amount of damages to be awarded, if any.

## IX. DISCOVERY

All discovery is complete.

## X. DISCLOSURES AND EXHIBIT LIST

All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

The parties' Joint Exhibit List (Dkt. 79), was filed under separate cover as required by Local Rule 16-6.1, on September 14, 2021. The parties met and conferred on January 13, 2022, to try to resolve the remaining objections prior to trial. The parties

1  agreed to withdraw certain exhibits and objections, and filed 2nd Amended Joint Exhibit
2  List on January 21, 2022 (Dkt. 113). All exhibits identified in the Amended Joint Exhibit
3  List will be admitted without objection at trial, except those exhibits listed below:

<u>Plaintiff's Statement</u>:  Plaintiff objects to Defendant's Exhibit Nos.: none.

<u>Defendant's Statement</u>: Defendant objects to Exhibit Nos.: 102, 105, 107, 109, 110, and 114. Defendant's grounds for objections to each exhibit set forth in the table attached hereto as Exhibit A.

## XI. WITNESS LISTS

Witness lists of the parties have been filed with the Court. *See* Defendant's Witness List (Dkt. 78), and Plaintiff's Amended Witness List (Dkt. 81). Only the witnesses identified in the lists will be permitted to testify (other than for impeachment or rebuttal). Defendant further maintains that the witnesses recently added to Plaintiff's Amended Witness List, who were not previously identified, should be excluded from Plaintiff's witness list.

Plaintiff contends that the witnesses added to Plaintiff's Amended Witness List, are recently discovered witnesses who have relevant evidence. Further, Plaintiff maintains that these witnesses should be able to be used in Plaintiff's case in chief and at a minimum for impeachment and rebuttal purposes.

In the interest of an efficient presentation of witnesses and evidence, Defendant proposes that one week prior to trial the parties jointly file a final witness list indicating (i) the order in which their witnesses will be called to testify and (ii) time estimates for the testimony (direct and cross-examination) of each witness. This will allow Defendant to more efficiently schedule the witnesses who will be traveling from Washington D.C. to testify at trial.

The parties do not intend to present evidence by way of deposition testimony.

## XII. MOTIONS IN LIMINE

The following law and motion matter and motions *in limine,* and no others, are pending or contemplated:

Plaintiff: none

Defendant: none

## XIII. BIFURCATION

Bifurcation of the following issues for trial is ordered: The Parties do not seek bifurcation of any issues. *See* Status Report (Dkt. 95).

## XIV. ADMISSIONS

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

Dated: February 8 , 2022

_____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

Approved as to form and content:

SAN DIEGO EMPLOYMENT LAW
GROUP

*/s/ Douglas M. Weisband*
_____
DOUGLAS M. WEISBAND, ESQ.
Attorneys for Plaintiff, Clarence Boyce

TRACY L. WILKISON
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section, Civil Division

/s/ *Alarice M. Medrano*
_____
ALARICE M. MEDRANO
Assistant United States Attorney

Attorneys for Defendant, Alejandro Mayorkas, Secretary, Department of Homeland Security, Customs and Border Patrol