UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CLARENCE ETHAN BOYCE, <br><br> Plaintiff, <br><br> v. <br><br> ALEJANDRO MAYORKAS[1], SECRETARY, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, CUSTOMS AND BORDER PROTECTION, <br><br> Defendant. | No. ED CV 18-01576-CBM(SHKx) <br><br> **FINDINGS OF FACT AND CONCLUSIONS OF LAW** <br><br> Honorable Consuelo B. Marshall <br> United States District Judge |

Following a six-day bench trial in this action, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52:

## I.   FINDINGS OF FACT

Considering the evidence presented and weighing credibility, the Court finds as follows:

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Alejandro Mayorkas, who was sworn in Secretary for Homeland Security on February 2, 2021, is automatically substituted as defendant in this matter.

1. On April 2, 2009, Plaintiff Clarence Boyce ("Plaintiff") began his employment as a Border Patrol Agent ("BPA") with the U.S. Customs and Border Protection ("CBP").

2. Plaintiff held the position of BPA at all times relevant to this action until the effective date of his removal on November 16, 2017.

3. On May 10, 2016, Plaintiff signed a Last Chance Agreement with CBP in which he agreed not to engage in any conduct unbecoming a BPA for two years from the effective date of the agreement. In exchange, CBP agreed not to immediately remove Plaintiff from his position as a Border Patrol Agent, GS-1896-12 and to hold the removal action in abeyance pending Plaintiff's compliance with the agreement for the two-year period.

4. In November 2017, Watch Commander ("WC") Arturo Velez oversaw patrol Group B, which included Supervisory Border Patrol Agents ("SBPA") and approximately 14 BPAs, including Plaintiff. Group B was the "day shift," which was a 10 hour shift that started at 0600 hours (6:00 a.m.) and ended at 1600 hours (4:00 p.m.).

5. There is an overlap in shifts of Patrol Group B and Patrol Group C from 2:00-4:00 p.m. The purpose of the overlap between shifts is to avoid a gap in coverage out in the field.

6. Under the Border Patrol Agent Pay Reform Act ("BPAPRA"), BPAs sign an agreement at the beginning of each year, indicating how much overtime they commit to work.

7. In November 2017, Plaintiff was a BPA assigned to patrol Group B at Murrieta Station. Plaintiff had elected level 2 overtime, which required him to work 50 hours per week, and included 10 hours of BPAPRA. In November 2017, Plaintiff's BPAPRA overtime hours were from 2:00-4:00 p.m. during the last two hours of his shift.

8. On November 2, 2017, Plaintiff met with Supervisory Border Patrol Agent ("SBPA") Scott Pinckney and WC Arturo Velez. Plaintiff informed SBPA Pinckney and WC Velez that another BPA, Froylan Mendiola ("Mendiola"), reported an allegation

that Mendiola had been subjected to unlawful racial profiling.  During the same meeting on November 2, 2017, Plaintiff also reported that BPA Ruth Chavez ("Chavez") complained about SBPA Pinckney.

9. On November 3, 2017, Plaintiff was assigned the Northbound License Plate Reader nonfixed roving patrol duties in Zone 67.  Zone 67 encompasses the I-15 corridor from the city of Murrieta to the city of Corona.

10. Plaintiff was one of two units assigned to the I-15 northbound corridor in Zone 67 on November 3, 2017.

11. Prior to arriving at the Murrieta Station on November 3, 2017, Plaintiff contacted SBPA Pinckney to report that he would arrive at the Murrieta Station approximately ten minutes late.

12. Plaintiff arrived at the Murrieta Station on November 3, 2017, at approximately 6:11 a.m.  Shortly after arriving at the station, Plaintiff was informed about his work assignment in Zone 67.

13. At approximately 6:15 a.m. on November 3, 2017, Plaintiff met with SBPA McClung in his office to discuss his shift assignment. Plaintiff also stated that he wanted to work on an EEO related matter.

14. SBPA McClung informed Plaintiff on November 3, 2017 that Plaintiff was one of two units on assigned to the northbound I-15 northbound corridor in Zone 67, and that Plaintiff could work on the EEO related matter at the end of his shift on BPAPRA from 2:00-4:00 p.m.

15. At approximately 6:17 a.m. on November 3, 2017, Plaintiff and SBPA McClung approached WC Velez to discuss the shift assignment and whether Plaintiff could work on an EEO related matter that day.

16. WC Velez told Plaintiff he was needed out in the field due to staffing limitations on November 3, 2017, Plaintiff was one of only two LPR chase units assigned that day, and Plaintiff could work on any EEO related matters during the last

3

two hours of his shift from 2:00-4:00 p.m. during BPAPRA overtime on November 3, 2017.

17. Plaintiff repeated to WC Velez that he wanted to work on an EEO related matter on November 3, 2017, but Velez instructed Plaintiff to go out in the field and work his assigned duties, and told Plaintiff he was not to be at the station at a computer until after 2:00 p.m. during his BPAPRA overtime that day. Later that morning on November 3, 2017, Plaintiff said he was taking sick leave that day and Velez approved Plaintiff's request for sick leave.

18. Weighing credibility, the Court finds WC Velez and SBPA McClung's testimony that on November 3, 2017, Plaintiff was instructed to be out in the field and not to return to the station until after 2:00 p.m., and was informed that he was authorized to work on the EEO related matters after 2:00 p.m. during his BPAPRA overtime, was credible. The Court finds Plaintiff's testimony that his supervisors did not tell him to remain out in the field, did not tell him not to return to the station without supervisory authorization, and did not tell him he could not start working on the EEO related matter until after 2:00 p.m. during BPAPRA on November 3, 2017, was not credible.

19. Plaintiff subsequently elected not to take sick leave that day, SBPA McClung gave Plaintiff keys for his assigned vehicle, and Plaintiff left the station to go out into the field.

20. On November 3, 2017, Plaintiff returned from the field and entered the Murrieta Station at approximately 10:40 a.m.

21. Plaintiff returned to the station without notifying his supervisors or requesting authorization. Plaintiff remained at the station from approximately 10:40 a.m. until approximately 1:00 pm on November 3, 2017. Plaintiff began working on the EEO related matter at the station at approximately 12:00 p.m. on November 3, 2017.

22. At approximately 12:50 p.m. on November 3, 2017, SBPA Pinckney and SBPA McClung approached Plaintiff in the quiet room of the Murrieta Station. SBPA Pinckney asked Plaintiff why he was back at the station and not out in the field. Plaintiff

4

told McClung and Pinckney that he was working on the EEO related matter.  Plaintiff subsequently requested sick leave which was granted, and Plaintiff departed the Murrieta Station at approximately 1:00 p.m.

23. After Velez was informed that Plaintiff had returned to the station before 2:00 p.m. and was at a computer in the quiet room, Velez instructed the supervisors to request that Plaintiff prepare a memo addressing: (1) why he violated a direct order to stay in the field on November 3, 2017; and (2) who gave him permission to come in from the field early to work on an EEO claim.

24. On November 3, 2017, WC Velez informed Acting Patrol Agent in Charge, Marc Gonzalez ("Gonzalez") regarding the incident involving Plaintiff.  Gonzalez instructed Velez to obtain memorandums from Plaintiff and the supervisors regarding the incident with Plaintiff.

25. On November 4, 2017, Plaintiff requested and was granted emergency annual leave.

26. On November 5, 2017, Plaintiff was called into SBPA Pinckney's office. SBPA Pinckney gave Plaintiff a Weingarten notice and instructed him to prepare a memorandum regarding the November 3, 2017 events.

27. Plaintiff prepared a memorandum on November 5, 2017.  In the memorandum, Plaintiff accused SBPA Pinckney of harassment and retaliation.

28. On November 7, 2017, at approximately 1:10 a.m., Plaintiff sent an email to Chief Rodney Scott accusing Murrieta Station management officials of misconduct.  The management officials included on the November 7, 2017 email, were Chief Rodney Scott, Walter Davenport, Marc Gonzalez, Stanley McClung, Scott Gandre, Scott Pinckney.  Fredrick Kochmanksi and Arturo Velez were also included in the email.

29. On November 7, 2017, WC Velez forwarded his Memorandum to Gonzalez, the Memorandums from SBPA McClung and SBPA Pinckney, access card information, and the surveillance videotapes of Plaintiff.  WC Velez was not aware Plaintiff had signed a Last Chance Agreement when he submitted the memoranda

5

1  regarding the November 3, 2017 incident with Plaintiff to Gonzalez.  WC Velez made no
2  recommendation regarding any disciplinary action for Plaintiff, and was not the
3  proposing or deciding official in regard to the removal.

    30.   Between November 3 and November 7, 2017, SBPA McClung was not aware Plaintiff had signed a Last Chance Agreement.  SBPA McClung did not propose or recommend any disciplinary action for Plaintiff.

    31.   On November 16, 2017, Rodney Scott ("Scott") was the Chief Patrol Agent for the San Diego Sector.

    32.   On November 16, 2017, Scott determined Plaintiff's abandonment of his assigned post without communicating or obtaining supervisory authority, Plaintiff's insubordination, and Plaintiff's disregard of instructions from his supervisors to remain out in the field and not return to the station until after 2:00 p.m. on November 3, 2017 was conduct unbecoming of a BPA which violated the terms of Plaintiff's Last Chance Agreement.

    33.   On November 16, 2017, Scott issued a notice of removal action to Plaintiff.  Patrol Agent in Charge Walter Davenport physically handed Plaintiff the notice of removal.  The notice of removal stated Plaintiff breached the Last Chance Agreement by engaging in conduct unbecoming a BPA.

    34.   On December 13, 2017, Plaintiff, through his attorneys, filed an action before the Merit System Protection Board, appealing his removal.

## II.   CONCLUSIONS OF LAW

1.   Plaintiff asserts a claim against Defendant for retaliation under Title VII. To establish a prima facie case of retaliation, Plaintiff must demonstrate:  (1) he engaged or was engaging in activity protected under Title VII, (2) the employer subjected him to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action. *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1064 (9th Cir. 2002); *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987).  As to the third

element for Plaintiff's prima facie case, Plaintiff must demonstrate his protected activity was a but-for cause of the alleged adverse action.  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

  2. If Plaintiff establishes a prima facie case for retaliation, the *McDonnell Douglas* burden-shifting framework applies and "the burden of production—but not persuasion—then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Villiarimo*, 281 F.3d at 1062.  "If the employer does so, the plaintiff must show that the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id*. (internal quotations and citations omitted).  "[I]f the plaintiff can show pretext, then the *McDonnell Douglas* framework disappear[s]." *Id.*  "The ultimate burden of persuading the trier of fact that the defendant intentionally [retaliated] against the plaintiff remains at all times with the plaintiff." *Id*. (internal quotations and citations omitted).

  3. Assuming Plaintiff demonstrates a prima facie case of retaliation, the Court finds Defendant had a legitimate, non-discriminatory reason for removing Plaintiff from his position as BPA on November 16, 2017 based on Plaintiff's violation of the Last Chance Agreement for conduct unbecoming of a BPA based on Plaintiff's actions on November 3, 2017.  *See Allstot v. Confluence Health*, 2018 WL 3966255, at *6 (E.D. Wash. Aug. 17, 2018) (violation of last chance agreement was a legitimate, nondiscriminatory reason for termination).  Plaintiff disobeyed his supervisors' instructions on November 3, 2017 to work his assigned duties out in the field until 2:00 p.m. and not return to the station to work on administrative matters including the EEO matter until after 2:00 p.m. during his BPAPRA overtime hours.  Plaintiff's actions on November 3, 2017 demonstrated his disregard of his supervisors' authority and insubordination, which Scott determined to be conduct unbecoming of a BPA in violation of Plaintiff's Last Chance Agreement.

4.  Plaintiff fails to demonstrate Defendant's proffered reason for terminating Plaintiff's employment is pretextual.

\*   \*   \*

Any finding of fact which constitutes a conclusion of law is hereby deemed as a conclusion of law. Any conclusion of law which constitutes a finding of fact is hereby deemed a finding of fact.

### III.  CONCLUSION

For the foregoing reasons, judgment shall be entered in favor of Defendant and against Plaintiff.

Dated: November 8, 2022.

HON. CONSUELO B. MARSHALL
U.S. District Court Judge